THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KENNETH C. FOUST, Defendant-Appellant.

Fourth District   No. 15714

Opinion filed March 12, 1980.

Richard J. Wilson and Janet Sinder, both of State Appellate Defender's Office, of Springfield, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Gary J. Anderson and Denise M. Paul, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

Foust appeals his two convictions for armed violence.

The bottom line: We affirm one, reverse one.

Donald Murray, an Illinois State Trooper, testified at trial that at approximately 3:45 p.m. on December 3, 1978, he was using radar to check cars for speeding on Interstate 57, south of Pesotum, Illinois. He was in a squad car, facing south, when he clocked a 1975 brown Pontiac Grand Prix going north at 81 m.p.h. He crossed the median and pursued the car, which pulled over and stopped. Trooper Murray radioed the license plate number to the dispatcher and approached the car. He identified defendant as the driver of the car. A woman and child were in the back seat.

When defendant could not produce a driver's license, Murray took him back to the squad car. He then received information that the Grand Prix had been reported stolen in Mississippi. At this point, three other squad cars arrived at the scene. The woman in the car was asked for identification and gave the officers a driver's license in the name of Brenda Box.

The police decided to take the three back to headquarters in Pesotum. Defendant was taken in the squad car while the woman drove the Pontiac. At headquarters, the police were informed that the car had been stolen and that the man and woman had been involved in an armed robbery and kidnapping in Mississippi. They discovered that the woman's name was Karen Gainer, a/k/a Karen Gainer Foust.

The police told defendant and Karen Foust that they would be taken to the Champaign county jail. They were taken outside and defendant got in the squad car. Karen Foust said that she needed the baby's diaper bag from the car, so she and Corporal Lloyd Spencer went to get it. When they returned to the police car, defendant asked her if she had gotten his cigarettes. She said that she had not, and Corporal Spencer offered to retrieve them.

While Corporal Spencer was unlocking the Pontiac, Trooper Murray heard the woman tell him, Murray, not to move. He turned around and saw that she was pointing a gun at his head. Karen Foust told Trooper Murray to put the car in gear and drive away. Murray said he would not. She handed the gun to the defendant who was in the front seat. Murray testified that defendant aimed the gun at his midsection. He said defendant told him to put the car in gear and leave, but Murray steadfastly stated "that we wasn't leaving." He also testified that defendant tried to grab his gun, but Murray pushed his hand away and told him he wasn't getting it.

At this point, Trooper Murray noticed Corporal Spencer returning to the squad car. When defendant saw this, he put the gun between his legs and told Murray not to say anything. Murray saw that defendant was watching Corporal Spencer, so he opened the door and rolled out of the car yelling that they had a gun. Defendant exited the car with his hands on his head. He was put on the ground and handcuffed. He did not have the weapon. Corporal Spencer removed Karen Foust from the car and handcuffed her. He opened the back door of the car and saw the gun on the back seat.

On December 5, 1978, defendant and Karen Foust were charged by information with four counts of armed violence (a Class X felony), arising out of the incident which occurred on December 3, 1978. The armed violence charges were based on kidnapping, attempt kidnapping, unlawful restraint, and intimidation. The informations alleged that

defendant committed the offenses "while armed with a dangerous weapon." On January 30, 1979, the State made a motion to amend the informations to show that the weapon used by defendant was a handgun. This was allowed.

Defendant filed a motion *in limine* on February 13, 1979, requesting that the court prevent the introduction of evidence pertaining to the alleged criminal acts of defendant in Mississippi on November 29, 1978. The charges pending in Mississippi alleged that defendant and Karen Foust had obtained a ride with Brenda Box. At some point they had taken control of the car at gunpoint, forced Brenda Box to ride with them for approximately 30 miles, and stole money from her purse. Furthermore, Brenda Box had allegedly been sexually assaulted.

At the hearing on this motion, the court found that evidence of the Mississippi charges of armed robbery, kidnapping, and theft were admissible to show defendant's motive. A stipulation was entered which excluded any mention of rape and sodomy charges against the defendant in Mississippi.

On February 14, 1979, the day of trial, defense counsel indicated that he had just received supplemental discovery containing statements made by defendant and Karen Foust, who pleaded guilty to unlawful restraint. The State's Attorney told the court that he had just received the report and that he would not use the statement in his case in chief. Defense counsel was allowed a short continuance in order to read the report.

Prior to trial, the court dismissed the count of armed violence based on kidnapping on the motion of the State.

Karen Foust testified for defendant that on December 3, 1978, she, defendant, and her child were traveling on I-57. The defendant woke her up and said that they were being stopped for speeding. She stated that the gun was her father's and that she had it in her possession for several months. When the policeman was in the car with defendant, she put the gun in the diaper bag. She admitted giving the officers a false name when she was questioned.

Karen Foust also said that when the officer went back to the car to get the cigarettes for the defendant she was frightened and scared. She stated that she pulled out the gun and told the officer to drive away. She also said that defendant did not know that the gun was in the diaper bag at the time. She and defendant had not planned that they were going to take the gun out. When Trooper Murray said that it wasn't going to work, she handed the gun to the defendant. Defendant did not ask her for the gun, and he was shocked when she handed it to him. She also said that when she handed the gun to defendant, he did not say anything to Trooper Murray except something like "please just forget about it and don't tell the other officer."

At the instruction conference, defense counsel requested instructions on the lesser included offenses of attempt unlawful restraint, attempt intimidation, aggravated assault, and reckless conduct. The court agreed to instruct on attempt unlawful restraint, but refused the other instructions. The court then allowed the State to add an instruction on armed violence based on attempt unlawful restraint. The defendant objected to this, arguing that armed violence could not be based on an attempt to commit a Class 4 felony and that the State should not be permitted to add an armed violence charge after the trial.

The jury found defendant guilty of armed violence (based on attempt unlawful restraint), armed violence (based on intimidation), attempt unlawful restraint, and intimidation. He was found not guilty of armed violence based on unlawful restraint and unlawful restraint. The jury did not reach a verdict on the armed violence based on attempt kidnapping or the attempt kidnapping. Defendant was sentenced to two *concurrent* terms of 12 years on the armed violence charges.

## I

Defendant raises six issues on appeal. He initially asserts that the trial court abused its discretion in allowing evidence as to the pending charges in Mississippi. Defendant claims that the prejudicial impact of this evidence outweighed its probative value. *People v. Walters* (1979), 69 Ill. App. 3d 906, 387 N.E.2d 1230.

■■ The general rule is that evidence of an extra-indictment offense is not admissible unless it goes to show motive, intent, identity, absence of mistake, or *modus operandi. (People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The trial court found—and we agree—that the evidence of the Mississippi charges was relevant to establish defendant's motive. In this regard, the evidence was highly probative. The defendant was charged with using a deadly weapon to avoid a lawful capture. In the absence of evidence concerning motive, the jury could easily have determined that it was unreasonable to believe that defendant would attempt to escape by abducting an officer merely to avoid a speeding ticket. The trial court did not abuse its discretion.

## II

Defendant next claims that he was denied a fair trial because the State did not provide him with the statement of his co-defendant until the date of trial. In the statement, Karen Foust told the police that defendant agreed to take all the blame for the Mississippi offenses if they were caught. The statement was only used to impeach Karen Foust when she took the stand as a defense witness.

■ It is clear that the State was required to provide the defendant with

this statement upon his filing of the written motion. (73 Ill. 2d R.412(a)(ii).) We do not, however, feel that the State's failure to disclose the statements in this case constituted reversible error. According to the State's Attorney, the statement was given to defendant as soon as the prosecutor became aware of its existence. The trial court allowed defendant a continuance so that he could examine the statement. And the State agreed not to use the statement in their case in chief. Finally, the statement was admitted solely for impeachment purposes and not as substantive evidence.

### III

Defendant also contends that he was entitled to a jury instruction which required the jury to make a finding as to the category of weapon used. The State claims, *inter alia*, that the issue has been waived.

In Illinois, a person commits the offense of armed violence when "while armed with a dangerous weapon, he commits any felony defined by Illinois Law." (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—2.) A dangerous weapon may be either a Category I or a Category II weapon. Category I weapons include pistols, revolvers, and handguns. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—1.) The distinction between Category I and Category II weapons determines the sentence which may be imposed for the commission of armed violence. If a Category I weapon is used, the offense is a Class X felony. If a Category II weapon is used, the offense is a Class 2 felony. Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—3.

The argument presented by defendant here is identical to an argument presented by defendant in our recent case of *People v. Howard* (1979), 78 Ill. App. 3d 858, 397 N.E.2d 877. In *Howard*, this court determined that the category of weapon used is an essential element of the offense of armed violence, and as such, defendant may have been entitled to a jury finding on the category of weapon. It was determined, however, that defendant in *Howard* waived the defect in the instruction and verdict form by failing to object before they were tendered to the jury.

In the instant case, as in *Howard*, the instructions in question were given without objection and, thus, defendant has waived the error. *People v. Jones* (1973), 53 Ill. 2d 460, 292 N.E.2d 361.

### IV

In a related argument, defendant claims that it was error for the trial court to allow the State to amend the information to show the type of weapon used. The original informations charged defendant with armed violence, a Class X felony, in that he committed the specified felonies "while armed with a dangerous weapon." After the preliminary hearing,

the trial court allowed the State to amend the information by insertion of the words "hand gun."

■■ The general rule in Illinois is that formal defect in informations may be cured by amendments, while fundamental or substantive defects may not. (Ill. Rev. Stat. 1977, ch. 38, par. 111—5.) In the instant case, the defect was a formal defect and the amendment was properly allowed.

The original information filed designated the offense to be a Class X felony which necessarily involves the use of a Category I weapon since there was no allegation of a prior offense. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—3.) Additionally, the armed violence charge based on attempt kidnapping alleged that defendant pointed a gun at Donald Murray. While the category of weapon used is an element of the offense which requires it to be set forth in the information (*Howard*), the defect in this case was formal and as such was properly cured by amendment.

Furthermore, the defect in this case did not result in substantial prejudice to defendant's ability to prepare a defense. (*Jones*). The testimony at the preliminary hearing and the information furnished in discovery apprised defendant that the State was proceeding on the theory that he was armed with a handgun or a revolver when he perpetrated the underlying felony. There was no issue at trial that a gun was used. Karen Foust, a defense witness, identified People's exhibit No. 1 as the .22-caliber revolver she and defendant handled on the date in question. Clearly defendant's ability to prepare a defense was not prejudiced by the defect.

## V

Defendant next argues that the trial court erred in refusing to give the instruction on aggravated assault as tendered by defendant. At the instruction conference, defense counsel submitted the aggravated assault instruction claiming that aggravated assault was a lesser included offense of unlawful restraint. Defendant now asserts that the instruction should have been given since aggravated assault was a lesser included offense of intimidation.

The State claims that defendant is estopped from making this argument on appeal due to the inconsistent argument below. (*People v. Pendleton* (1974), 24 Ill. App. 3d 385, 321 N.E.2d 433.) In *Pendleton*, the defendant argued at the conference on instruction that motive had been proved. The court on review held that the defendant was not then entitled to take the position on appeal that the instruction (which stated that the State was not required to prove motive) should not have been given because motive had been proved.

■■ Unlike *Pendleton*, defendant's position in this case is not necessarily

inconsistent. By arguing that aggravated assault is a lesser included offense of unlawful restraint, defendant does not necessarily claim that it was not a lesser included offense of intimidation. Defendant was not estopped from presenting this issue.

■■ We hold, however, that defendant was not entitled to the aggravated assault instruction.

An included offense is defined as an offense which is "established by proof of the same or less than all of the facts or a less culpable mental state (or both), than that which is required to establish the commission of the offense charged * * *." (Ill. Rev. Stat. 1977, ch. 38, par. 2—9(a).) For an offense to be a lesser included offense it is necessary that the greater offense include every element in the lesser offense plus one or more elements. The lesser offense does not have any element not included in the greater offense so that it is impossible to commit the greater offense without necessarily committing the lesser. *People v. Delk* (1976), 36 Ill. App. 3d 1027, 345 N.E.2d 197.

In the instant case, proof of aggravated assault requires the showing that defendant's conduct placed another in reasonable apprehension of receiving a battery in that the defendant, at the time, was either using a deadly weapon or knew the individual assaulted to be a police officer engaged in the execution of his official duties. (Ill. Rev. Stat. 1977, ch. 38, par. 12—2(a).) These elements are not necessary to establish the offense of intimidation. Additionally, intimidation requires that the perpetrator possess the intent to cause another to perform or omit the performance of an act. Ill. Rev. Stat. 1977, ch. 38, par. 12—6(a).

## VI

Defendant's final contention is that the armed violence conviction which was based on the attempt unlawful restraint must be vacated since attempt unlawful restraint is not a "felony" for purposes of the armed violence statute. We must agree.

As noted above, armed violence is the commission of a felony while armed with a dangerous weapon. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 33A—2.) Prior to the recent amendment of that section, armed violence only applied to certain specified crimes. With the passage of Public Act 80-1099 (effective February 1, 1978), the offense was broadened to include all felonies. There is no definition given in the section for the term felony.

The Criminal Code of 1961 defines a felony as an offense punishable by death or imprisonment for one year or more in the penitentiary, and a misdemeanor as an offense for which a sentence to a term of imprisonment in other than the penitentiary for one year. (Ill. Rev. Stat. 1977, ch. 38, pars. 2—7, 2—11.) The penalty which may be imposed for the specific offense determines whether the specific offense is a felony or a

misdemeanor. *People v. Kurtz* (1966), 69 Ill. App. 2d 282, 216 N.E.2d 524, *aff'd in pt., rev'd in pt.* (1967), 37 Ill. 2d 103, 224 N.E.2d 817.

Unlawful restraint is committed when a person knowingly and without legal authority detains another and it is punished as a Class 4 felony. (Ill. Rev. Stat. 1977, ch. 38, par. 10—3.) An attempt is committed when, with the intent to commit a specific offense, a person does any act which constitutes a substantial step toward the commission of that offense. (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8—4(a).) An attempt is punished in the following manner:

"(c) Sentence.

A person convicted of an attempt may be fined or imprisoned or both not to exceed the maximum provided for the offense attempted but, except for an attempt to commit the offense defined in Section 33A—2 of this Act.

(1) the sentence for attempt to commit murder shall not exceed the sentence for a Class X felony;

(2) the sentence for attempt to commit a Class X felony shall not exceed the sentence for a Class 1 felony;

(3) the sentence for attempt to commit a Class 1 felony shall not exceed the sentence for a Class 2 felony;

(4) the sentence for attempt to commit a Class 2 felony shall not exceed the sentence for a Class 3 felony;

(5) *the sentence for attempt to commit any felony other than those specified in Subsections (1), (2), (3) and (4) hereof shall not exceed the sentence for a Class 4 felony.*" (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 8—4(c). (Emphasis ours.)

Both parties cite the case of *People v. Moore* (1978), 69 Ill. 2d 520, 372 N.E.2d 666. In *Moore*, the trial court believed that the minimum penalty for attempt murder was 4 years, the minimum for murder. This court reversed the trial court and the case was taken to the supreme court. There it was held that the statute on attempt did not require that the crime attempted be treated for sentencing purposes as a class felony attempt. The court stated that the statute referred only to the maximum sentence to be imposed and did not set out a minimum sentence for the attempted offense. It was further noted that the trial court, in its discretion, could impose a minimum sentence for the crime attempted in accordance with a class felony attempted.

■■ Like *Moore*, the statute in the instant case specifies only the maximum sentence which may be imposed. While attempt unlawful restraint may have been penalized as a Class 4 felony, it may also have been penalized as a misdemeanor. As such, we do not feel that an attempt to commit a Class 4 felony is a felony for purposes of the armed violence statute. We reach this conclusion with an awareness that the legislature

has since amended the statute so that an attempt to commit a Class 4 felony is now penalized as a Class A misdemeanor. (Pub. Act 81-923, effective January 1, 1980.) We note, however, that the amendment did not apply to the instant case.

Defendant's conviction for armed violence based on attempt unlawful restraint is reversed and judgment is hereby vacated. The conviction for armed violence based on intimidation is affirmed.

Affirmed in part; reversed in part.

CRAVEN and GREEN, JJ., concur.